[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 2534
This is a statutory appeal concerning unemployment compensation. The Employment Security Board of Review has certified the record of this appeal to the court. The record reveals the following: The Administrator on April 24, 1997 denied the plaintiff-claimant's application for benefits. The referee upon appeal by plaintiff conducted a hearing denovo, made findings of fact and on September 10, 1997 affirmed the denial of benefits. The Referee onNovember 14, 1997 denied a motion to reopen her decision filed by plaintiff. The board of review upon plaintiff's appeal to it on August 21, 1998 remanded the appeal to the Referee for further proceedings.
The Referee on February 24, 1998 reversed the ineligibility ruling. The defendant employer appealed the Referee's decision to the board of review. The board adopted the Referees findings of fact with modifications and sustained the employers appeal. The plaintiff here appeals the decision of the board to the Superior Court.
The Superior Court in hearing an unemployment compensation appeal under Conn. Gen. Stat. § 31-249b does not hear the case de novo. The function of the court is to sit as an appellate court in reviewing the record certified by the board of review. The court does not retry the facts or hear evidence. United Parcel Service, Inc. v. Administrator,209 Conn. 381, 385, 551 A.2d 724 (1988); Finkenstein v. Administrator,192 Conn. 104, 112, 470 A.2d 1196 (1984). The court is bound by the findings of subordinate facts and the reasonable conclusions of the board. Finkenstein v. Administrator, 192 Conn. at 112; Robinson v.Unemployment Security Board of Review, 181 Conn. 1, 4, 434 A.2d 393
(1980); Guevara v. Administrator, 172 Conn. 492, 495, 379 A.2d 1101
(1977). The court may go no farther than to determine whether the board's decision is arbitrary, unreasonable or illegal. Id. The board's decision must stand if it results from a correct application of the law to the findings of facts and could reasonably follow from those findings.Finkenstein, 192 Conn. at 113; Robinson, 181 Conn. at 5.
At issue in this case is whether the employee Leonard S. Campbell (Campbell) was insubordinate when he refused the request of Michael F. Conway, Mayor of the Town of Plymouth, to sign off on one or more documents that indicated the hours and value of the services Campbell had rendered to the Town on behalf of the Industrial Park Grant coordination.
The following facts are not in dispute. Campbell was hired on April 14, 1988 as Town Planner. He was to work 35 hours a week for an annual CT Page 2535 salary of $36,000. Campbell's job description at the time he was hired provided for preparation of grant applications for economic development; administering grants; and coordinating maintenance of the Industrial Park Grant with Public Works. At the time the Industrial Park Grant was approved in 1990 Campbell's salary was $39,690 for a 35 hour work week.
In 1994 while Campbell was on vacation the town council unilaterally made his Town Planner job part-time and reduced his salary by 66% to $15,000 a year. At the same time Campbell was given added duties of Zoning Enforcement Officer for which he was paid $8,000 a year. This brought his annual salary to $23,000, 43% less than he earned as a full-time planner prior to 1994.
The Industrial Park Grant which the Town of Plymouth received in 199.0 called for a local share of $94,000. This was to be provided by the Town in-kind in the amount of $32,000 and cash in the amount of $62,000. The $32,000 represented 10% of the Town Planner's time which was valued on the basis of his salary at that time.
Between 1990 and 1994 there was no problem with meeting the in-kind match because Campbell was working full-time as the Town Planner. However, when his Town Planner salary was reduced to $15,000, the 10% computed against that time resulted in a significant short fall for the Grant's in-kind service figure. This was brought to the attention of the Town in a series of letters exchanged between the Town's two mayors, Mayor Conway and his successor Mayor David Denis. These letters are attached as Exhibits A through H and covered a two year period from June 1994 through June 1996.
In 1997 Campbell was being put in the position of providing information on a grant he had not administered since 1994 when his job as Town Planner was made part-time and his salary reduced from over $40,000 a year to $15,000 a year, a 66% reduction in salary. The Town took the position that since the job description Campbell was hired under in 1988 called for preparation of grant applications for economic development, administering grants and coordinating maintenance of the Industrial Park Grant with Public Works, they could require him to continue to work on the Industrial Park Grant to the same extent that he did before his salary was cut by 66%.
The problem created by his 2/3 salary cut was that Campbell had to reduce his hours to 20 hours a week several of which he had to dedicate to his new duties as Zoning Enforcement Officer. Thus, when it came time to reflect the in-kind services to have been provided the Industrial Park Grant by the Town Planner Campbell had none of his time to show. This was the reason that he could not provide the in-kind information called for CT Page 2536 in the close out plan for the Grant.
There is no question that Campbell put the town on notice that because of his salary cut as Town Planner he would no longer be administering the grant. The day of reckoning came for the Town when it had to submit its accounting to the State agency which accounting had to reflect the in-kind town planner time which the Town had committed itself to but which had not been forthcoming since 1994.
The decision of the associate appeals referee for the Unemployment Commission was in error in two respects. The first was that the decision was premised on the fact that Campbell's job specifications required him to administer grants including the Industrial park Grant regardless of the fact that the terms of his employment were changed dramatically in 1994 when his Town Planner salary was reduced by 66% and his Town Planner job made part-time. Second, the decision was premised on the finding by the Appeals Referee that Campbell had acquiesced in the change and thus could not be heard to complain. In fact, as evidenced by the series of letters exchanged between Campbell and the Town's mayors, he made it very clear as soon as his hours were reduced that he could not administer the grant and that the grant requisite of 10% of Town Planner time could not be met under his reduced schedule and reduced salary.
An employer cannot order an employee to act in a manner which compromises that employee's professional integrity. From 1994 on, 10% of the Town Planner's salary of $15,000 fell far short of the value of in-kind Town Planner service which the Town of Plymouth had pre-committed itself to in 1990 in order to qualify for the grant. The mere fact that Campbell may have signed off on a purchase order because it crossed his desk and he was familiar with the project, does not make him the project administrator.Nor, does it make him privy to the full gamit of information needed to prepare the close out statement.Nor, is he able to say that his in-kind service to the grant was more than 10% of his Town Planner salary of $15,000.
Refusing to do what he literally could not do does not make Campbell insubordinate; does not constitute a refusal to perform a job function; does not give the employer a reason for termination with cause. The employer should not be allowed to shift responsibility to the employee when the employer's own actions were the cause of the problem which the employee is expected to resolve, when that employee makes it patently clear that he cannot resolve it.
The decision of the Appeals Referee is reversed. Judgment may enter in favor of the plaintiff-claimant, Leonard S. Campbell. CT Page 2537
Hennessy, J.
 EXHIBIT A TOWN of PLYMOUTH OFFICE OF MAYOR 19 EAST MAIN STREET, TERRYVILLE, CONNECTICUT 06786-1295 TEL. (203) 585-4002 FAX (203) 585-4015
MICHAEL F. CONWAY, Mayor
June 27, 1994
TO: Leonard Campbell
FROM: Michael F. Conway, Mayor
RE: Budget Reduction
In regards to your letter of dune 21 and the addendum of June 23:
 a. The Annual Town Meeting clearly reduced the Town Planner portion of the Public Works budget by $45,034.
 b. The Board of Finance, after hearing a legal opinion from Town Counsel, funded the planner's position as part-time with a salary of $15,000.
 c. The Mayor, having to carry out the legal mandates of the meetings must adhere to both a and b.
 d. Therefore, as of duly 1, 1994, the position of Town Planner of the Town of Plymouth will be reduced from full-time to part-time. (Also, it is my wish that Tom Stansfield remain zoning enforcement officer).
In response to the Industrial Park funds, these are reimbursable to anyone doing the work. Furthermore, the grant money would have to be appropriated ($16,522 which may be benefits too, not just straight salary). The most money that could be charged for in-kind services is $15,000, that which is budgeted.
As for my advocacy of local laws, ordinances and permits; I still and will adhere to the highest possible standards and will insist on the entire staff working in a professional manner and Complimenting one CT Page 2538 another so as not to jeopardize or compromise the well being of the Town of Plymouth.
Michael F. Conway
 EXHIBIT B TOWN of PLYMOUTH LAND USE DEPARTMENT Terryville, Connecticut 06786 Planning Zoning Industrial Conservation 
Commission Development Inland Wetlands Zoning Board of Appeals Commission Commission
July 17, 1995
To: Mayor Conway
From: Leonard S. Campbell, MLA, Director of Planning 
Economic Development
Re: Industrial Park Grant
Dear Mayor Conway,
With the beginning of fiscal year 1995-96, the Industrial Park Grant is now budgeted. The Town's 50% match is to be made up of part cash and part my salary. My current salary at $23,000 does not contain funds to satisfy that match requirement. The short fall is $15,000 which cash was appropriated last year. Added to my salary, that will then provide the staff planning time budgeted in the contract with the State of Connecticut. My salary will then only be restored to 84% of full time or thirty hours per week.
In order for the Town's contract obligation to the State to be fulfilled, you must authorize the comptroller to add the $15,000 to my salary for fiscal 1995-96.
Sincerely,
 Leonard S. Campbell, MLA Director of Planning 
Economic Development CT Page 2539
LSC: pep cc: Greg Adler
 EXHIBIT C
Town of Plymouth Planning Zoning Commission
 200 Years of Quality Service
80 Main Street, Terryville, Connecticut 06786 Telephone: (203) 585-4043 Fax: (203) 585-4015 Leonad S. Campbell. MLA] Town Planner
August 4, 1995
To: Mayor Michael Conway
From: Leonard S. Campbell, MLA, Director of Planning 
Economic Development
Re: Letter of July 21, 1995
Dear Mayor Conway,
I was encouraged Tuesday during our impromptu conversation in the town hall parking lot that you do intend to honor the Industrial Park contract and add the $15,000 to my salary for 1995-96 making a total salary of $38,000. I will update our current fiscal position with that contract and prepare the necessary requests for state funds through the Comptroller's office. However, your 7/17/95 letter does not appear to follow my understanding of the hours that these funds will support. Your letter of June 27, 1994 clearly understood that the $15,000 salary allocated for planning work was part time and not full time since my full salary was $40,475. Your letter of July 19, 1994 noted that the $8,000 added from the Planning and Zoning Commission enforcement account would increase my hours to full time ie 20 hours since $23,000 total still only paid for a portion of my previous full time salary.
The personnel policy for the town addressed this issue and allows for less than 35 hours a week. I volunteered additional hours during the past fiscal year, however, I cannot afford to continue to give the Town of Plymouth uncompensated time. I must devote those hours to gainful consultant or other work when available. CT Page 2540
Sincerely,
 Leonard S. Campbell, MLA Director of Planning 
Economic Development LSC; pep
 EXHIBIT D
Town of Plymouth Office of Mayor
 200 Years of Quality Service
80 Main Street, Terryville, Connecticut 06786 Telephone: (203)585-4002 Fax: (203)585-4015 Michael F. Conway Mayor
August 9, 1995
TO: Leonard Campbell
FROM: Michael F. Conway, Mayor
RE: Temporary Position Upgrade
Dear Leonard,
When all information has been gathered by you and the Comptroller, then a (final) meeting will be held to discuss your involvement in the Industrial Park Project: i.e.; the responsibilities and hours associated with this temporary position.
In response to your August 4, 1995 memo and as you know, your current responsibilities require that you work 35 (not 21) hours per week.
 EXHIBIT E
Town of Plymouth Office of Mayor
 200 Years of Quality Service
80 Main Street, Terryville, Connecticut 06786 Telephone: (203)585-4002 Fax: (203)585-4015
Michael F. Conway CT Page 2541 Mayor
August 9, 1995
TO: Leonard Campbell
FROM: Michael F. Conway, Mayor
RE: Temporary Position Upgrade
Dear Leonard,
When all information has been gathered by you and the Comptroller, then a (final) meeting will be held to discuss your involvement in the Industrial Park Project: i.e.; the responsibilities and hours associated with this temporary position.
In response to your August 4, 1995 memo and as you know, your current responsibilities require that you work 35 (not 21) hours per week.
 EXHIBIT F TOWN of PLYMOUTH LAND USE DEPARTMENT Terryville, Connecticut 06786 Planning Zoning Industrial Conservation 
Commission Development Inland Wetlands Zoning Board of Appeals Commission Commission
January 18, 1996
To: Mayor David Denis
 From: Leonard S. Campbell, MLA Director of Planning 
Economic Development
 Re: Activities Over the Past Two Years and Goals and Objectives for the Coming Year
Dear Dave,
The past two years have been a very trying time for me. The first few months seemed to portend well for the coming months with support from the CT Page 2542 mayor and the new council for the activities of the Land Use Department. The initial budget process went well and a beginning was made to try to save the Terryville Central Business District, continue the promotion of the Hancock Valley for tourism with a bicycle path and completion of the third phase of the industrial park. However, the 1994 town meeting was the beginning of disaster. The Planner's budget was reduced to $15,300 from the previous year's $45,434, a 65% reduction. While on my planned vacation in May, 1994, the Planning and Zoning Commission met to appoint me as the only Zoning Enforcement Officer starting July 1, 1994. Tom Stansfield was continued as the Conservation and Inland Wetlands Officer. Mayor Conway then allocated $8,000 of the $20,000 enforcement budget to my salary making my total income for the 94-95 fiscal year $23,000, a 43% reduction in my salary.
A meeting with Mayor Conway, the town's labor attorney, myself and my attorney did not change the situation even though I had outlined a way that my full salary could be met with funds available and still keep Tom Stansfield and Bill MacDermid on part time. This situation continued, however, and was again duplicated in the 95-96 budget with one exception — $15,000 was added to the capitol improvement plan of the industrial park. The contract with the state for the industrial park grant calls for $23,000 of my salary time to work on the industrial park. Some of that $23,000 has been spent in previous years, however, a portion of the $15,000 should be added to my salary for the remainder of the current fiscal year to meet that obligation. Mayor Conway indicated verbally he would do that but never did. As I mentioned to you, the. portion of my current $15,000 Planning salary is insufficient to support my time that is obligated to the industrial park contract.
The Terryville CBD project was abandoned without any effort to meet any of the objections voiced at the public hearing. The bicycle path was turned down by Mayor Conway and efforts by the Chamber of Commerce to revive it were tabled. A grant obtained to prepare a survey of historic buildings was turned back because of the failure of the finance board to fund the local match. It has been two frustrating years of going backward rather than going forward. However, the obligations of the Land Use Department have continued on. The staff has been decreased by nearly 50% but we have received 6% more zoning permit requests. Fortunately, due to a small change in the Zoning Regulations, the ZBA workload was reduced by 46% this past fiscal year, Wetland Permits were down by 7% and the Industrial and Development Commission met 58% less due to the on going saga of the stalled EIE study with the State DEP.
It would appear that the Planning and Zoning Enforcement account may have a $6,000 surplus by the end of the year if the current expenses continue and the $15,000 added to the industrial park account is now CT Page 2543 available. There is opportunity, therefore, to restore my salary to its 1994 level plus the 2% raise granted this past summer for the remainder of the year. I would then spend 46% of my time on economic development, 35% on planning and 19% on zoning enforcement. The $6,000 available in the enforcement account could be used to restore a part time zoning enforcement officer for the remainder of the fiscal year. Six candidates responded to the add for a part time enforcement officer this past spring, however, that effort was abandoned since Mayor Conway and the Conservation and Inland Wetlands Commission chose to accept a proposal by Tom Stansfield to perform the wetlands enforcement duties for $6,000 by maintaining office hours from 4:30-6:30 p.m. each Wednesday and attend their meetings on the first and third Wednesdays of each month. The restoration of my salary for the remainder of the fiscal year would, I believe, be made up of approximately $6,000 from my current salary account, $3,200 from the enforcement account and $8,140 from the industrial park account.
My goals for the next year are to continue to carry out the objectives of the adopted Plan of Development, complete the expansion of the industrial park, assist the Plymouth Chamber of Commerce with reviving Main Street and promoting tourism through identification of Plymouth's historic assets and development of the Hancock valley.
Sincerely,
 Leonard S. Campbell, MLA Director of Planning 
Economic Development
LSC: pep
 EXHIBIT G Planning and Zoning Commission TOWN OF PLYMOUTH TERRYVILLE, CONNECTICUT 06786
June 6, 1996
To: Mayor David Denis
From: Leonard S. Campbell, MLA, Director of Planning and Economic Development
Re: Director of Planning Compensation and Time Requirements CT Page 2544
Although I have verbally requested a response to my January 18, 1996 memo to you numerous times, no meeting with you and Manuel Gomes has been held to address the Industrial Park Funding issue. Over the past two years, I have addressed the issue to former Mayor Conway who in the fall of 1995 said he would allocate funds to support the work but never did. The Town of Plymouth entered into a contract with the Conn. Dept. of Economic Development through which $117,667 of state funds would be made available to match a similar amount of local funds made up of cash and inkind services. This is further detailed in the project financing plan and budget referred to in item 16 of the contract. On page 3, item 8 of this budget $15,120 of the Planning Director's salary is to be committed to the local supervision and inspection of the project plan. This amount was calculated on 10% of the Planning Director's time devoted to this project. With my. planning salary at $15,000.00, that amounts to $1,500 per year far short of the time and funds required by the contract. In my opinion, the town is in violation of the contract and the state may exercise its right under item 8 of the contract to withhold funds. The town has a valid contract with the Maguire Group to complete the Phase III project plan. These funds are, therefore, committed by the town but the town may not receive the $117,667 of state funds to support this expenditure if the state exercises its right under the contract.
I can no longer give the town volunteer time as I have liberally done over the past 7 years and I will no longer be treated differently than other employees. The current funding of my position of $16,400 for planning and $8,000 for zoning enforcement supports 21 hours per week of my time. Therefore, I propose to follow a work schedule of Monday, Wednesday and Thursday with time spend at evening meeting deducted from these days as appropriate.
As I have repeatedly pointed out, there are funds available in the budget to meet my full salary. The Board of Finance and the Town Council by their recent action have certainly demonstrated that they don't want my participation in the economic development process or the pursuit of grants since funds for this purpose have not been budgeted.
Sincerely,
 Leonard S. Campbell, MLA Director of Planning 
Economic Development
LSC: pep cc: Planning Zoning Commission Economic Development Commission CT Page 2545 Maguire Group
 EXHIBIT H
MEMORANDUM
 FROM THE DESK OF . . . David M. Denis, Mayor Town of Plymouth 80 Main Street Terryville, CT 06786 860-585-4002 fax 860-585-4015
TO: Leonard S. Campbell June 11, 1996
FROM: David M. Denis, Mayor
RE: June 6 memorandum
This is in response to your memorandum to me dated June 6, 1996.
As we have discussed at great length previously, the Comptroller and I respectfully disagree with your interpretation of the requirements of the Industrial Park grant. The Town is in compliance with the requirements of its contract with the State of Connecticut and it is not necessary that we augment your compensation in any way.
Moreover, as you know, with regard to the issue of your compensation for your duties as Town Planner and Zoning Enforcement Officer as a result of decisions made at previous Town Meetings and decisions of the Town Council, no additional funds shall be appropriated for your position. Accordingly, if you choose to continue in your position, you will be required to perform all required job duties for the agreed upon compensation. More specifically, your duties will require you to work thirty-five (35) hours per week at a weekly salary of $469.23 for the performance of all duties required of you as Town Planner and Zoning Enforcement Officer.
I fully respect the fact that you may feel that the burdens of your position have become too great in view of the salary the Town is offering. I cannot overemphasize, however, that if you choose to remain in your position, you will be expected to perform all required job duties of such position, including meeting the requirement that you work thirty-five (35) hours per week. Failure to do so will result in your termination.
There is one additional aspect of your memorandum of June 6th that I cannot overlook. More specifically, you state, "I can no longer give the CT Page 2546 Town volunteer time as I have liberally done over the past seven (7) years . . .". As you know, employees of the Town are not permitted to volunteer their services to the Town when the services they volunteer are similar to the services they are employed to perform. Further, it is the policy of the Town that all employees are required to properly account for all hour . . . they work for the Town by way of the time sheets provided for this purpose. After reviewing your personnel file, I have come across a very explicit memorandum from the former Mayor, Michael F. Conway, to you regarding your performance of your job duties as Town Planner. More specifically, on July 19, 1994, Mayor Conway instructed you that you were not authorized to work in excess of forty (40) hours per week for the Town of Plymouth. Accordingly, all work associated with your Town Planner/Zoning Enforcement Officer responsibilities, as well as your industrial park project responsibilities must be performed within (40) hours each week. In addition, on July 21, 1995 Mayor Conway instructed you, in response to a prior problem he discovered with regard to your accounting of work time, that "your failure to properly account for your work hours in the future shall result in disciplinary action".
Based upon the claims you have made in your June 6, 1996 memorandum to me, as set forth above, I am concerned that you may have provided the Town with additional services beyond those recorded on your time sheets. If so, I consider that a direct violation of Mayor Conway's prior written directives to you and the policies of the Town and cause for disciplinary action, up to and including the termination of your employment with the Town. Before I make any final decisions with regard to this issue, however, I would like to meet with you to hear your response to these concerns. Accordingly, please make arrangements to meet with me on June 14, 1996 at 10:00 a.m. I look forward to seeing you then.
DMD/jak